IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MT. HEBRON DISTRICT MISSIONARY BAPTIST ASSOCIATION OF AL, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO.: 3:16-cv-00658-CDL-GMB [WO] |
| THE HARTFORD COMPANY, *et al.*, | ) ) | |
| Defendants. | ) | |

**<u>REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

Pursuant to 28 U.S.C. § 636(b)(1), this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law. Doc. 55.  This recommendation relates to the following pending motions:

1. Sentinel Insurance Company's Motion to Dismiss Count III of Plaintiff's Amended Complaint (Doc. 20);

2. Southern Insurance Underwriters, Inc.'s Motion to Dismiss First Amended Complaint (Doc. 22);

3. The Hartford Financial Services Group, Inc.'s Motion to Dismiss (Doc. 31);

4. The Motion to Dismiss or Quash Service on Defendant Designated as "The Hartford Large Loss Organization" (Doc. 60).

5. Mt. Hebron District Missionary Baptist Association of AL, Inc.'s Oral Motion to Dismiss The Hartford Company, Inc.;

6. Mt. Hebron District Missionary Baptist Association of AL, Inc.'s Oral Motion to Dismiss The Hartford Billing Company: Sentinel Insurance Company, Ltd.;

7.    Mt. Hebron District Missionary Baptist Association of AL, Inc.'s Motion to Strike, Objection to Matters Outside of the Pleadings, and Motion to Remove Counsel of Record of Defendants (Doc. 50);

8.    Mt. Hebron District Missionary Baptist Association of AL, Inc.'s Motion to Dismiss Sentinel Insurance Company's Interpleader Counterclaim (Doc. 28); and

9.    Landon Alexander Sr.'s Motion to Sever and Separate Trials (Doc. 33).

Having convened the parties for oral argument on December 1, 2016, and having reviewed the supplemental materials (Docs. 67 & 71) requested by the court with respect to The Hartford Financial Services Group, Inc.'s Motion to Dismiss, the Magistrate Judge submits the recommendation set forth below.

## I.    BACKGROUND

Mt. Hebron District Missionary Baptist Association of AL, Inc. ("Mt. Hebron") operated a church in Russell County, Alabama. Doc. 1-1 at 1–2.   After a tornado destroyed the church on April 6, 2016, Mt. Hebron made a claim on its insurance policy, and expected to receive the full proceeds. Doc. 1-1 at 1–2.   Mt. Hebron instead received a check that was made out not to Mt. Hebron exclusively, but to Mt. Hebron and also Reverend Dr. Landon Alexander Sr. ("Alexander"). Doc. 1-1 at 2.   The check has not been negotiated. Doc. 1-1 at 2.   Mt. Hebron initially filed suit in the Circuit Court of Russell County, Alabama against The Hartford Company; The Hartford Billing Company; Sentinel Insurance Company, Ltd.; Southern Insurance Underwriters, Inc. ("SIU"); Sentinel Insurance Company, Limited ("Sentinel"); The Hartford Large Loss Organization ("HLLO"); and The Hartford Services Group, Inc. Doc. 1-1.   The lawsuit was removed to

this court on August 11, 2016.   Procedural machinations ensued.

Mt. Hebron filed its First Amended Complaint on September 2, 2016, and it remains the operative pleading. Doc. 11.   The First Amended Complaint states three causes of action, for breach of an insurance contract, bad-faith refusal to pay the proceeds of that insurance policy, and tortious interference with a contractual relationship. Doc. 11 at 6–9. The First Amended Complaint adds as a defendant The Hartford Financial Services Group, Inc. ("HFSG"). Doc. 11.   Upon answering Mt. Hebron's Amended Complaint, Sentinel brought an action in interpleader, alleging that it is the entity that issued the check payable to both Mt. Hebron and Alexander, and that it did so because the policy listed Alexander as a mortgagee on the property. Doc. 21 at 13.   Sentinel makes no claim to the insurance proceeds and merely seeks to interplead the funds so that a determination may be made as to the proper beneficiary. Doc. 21 at 14.   Alexander has answered the complaint in interpleader, claiming his entitlement to the policy proceeds. Doc. 24 at 4.   Mt. Hebron later filed a third-party complaint against Alexander alleging intentional interference with a contractual relationship. Doc. 34 at 2–3.

## II.   DISCUSSION

For clarity, the court has grouped the pending motions to differentiate between those relating to Mt. Hebron's First Amended Complaint and those relating to the action in interpleader.

1.      **Motions to Dismiss Mt. Hebron's First Amended Complaint**

   A.      *Sentinel's Motion to Dismiss*

   Sentinel seeks dismissal of Count Three, for tortious interference, on the grounds that it issued the policy to Mt. Hebron and thus cannot have been a stranger to that contract, as would be required for this cause of action. *See* Doc. 20; *MAC E., LLC v. Shoney's*, 535 F.3d 1293, 1297 (11th Cir. 2008) ("[A] tortious interference claim can be maintained only when the defendant is independent of or a stranger to the relation or contract with which he allegedly interfered.") (citing *Tom's Foods, Inc. v. Carn*, 896 So. 2d 443, 454 (Ala. 2004)). In support, Sentinel produced affidavit testimony from Terrence Shields, Assistant Vice President of HFSG, confirming that Sentinel issued the relevant policy. *See* Doc. 1-3 at ¶ 6. On this showing, Mt. Hebron does not oppose the dismissal of this claim, as its counsel confirmed during the hearing on December 1, 2016. Doc. 38.   The motion (Doc. 20) is well taken and is due to be GRANTED, and Count Three is due to be DISMISSED with prejudice as to Sentinel.

   B.      *SIU's Motion to Dismiss*

   SIU filed a motion to dismiss all claims against it under Federal Rule of Civil Procedure 12(b)(6).   In summary, SIU argues that it is a wholesale insurance agent and did not issue an insurance policy to Mt. Hebron, so it cannot be liable for breach of contract or bad-faith refusal to pay on the contract; and that the tortious interference claim fails for various reasons, including the fact that SIU is not a stranger to the contact by virtue of its interwoven contractual relationship with Sentinel, which did issue the policy. *See* Doc. 22.

Mt. Hebron does not oppose SIU's dismissal. Doc. 39.   The court concludes that the motion (Doc. 22) is well taken and is due to be GRANTED, and all claims stated against SIU are due to be DISMISSED with prejudice.

### C.      HFSG's Motion to Dismiss

HFSG argues, alternatively, that the court has no personal jurisdiction over it and that the First Amended Complaint fails to state a claim for relief against it. Doc. 31.   Mt. Hebron responded to the motion, which the parties argued orally during the hearing on December 1, and HFSG filed a reply in support. Docs. 37 & 41.   Following the hearing, the court ordered the parties to file supplemental briefs and evidentiary materials relating to the motion. Doc. 63.   Both HFSG and Mt. Hebron have submitted these supplemental materials (Docs. 67 & 71), and the motion is now ripe for review.   For the reasons stated below, the court recommends that the motion to dismiss (Doc. 31) be GRANTED pursuant to Federal Rule of Civil Procedure 12(b)(2) because the court has no personal jurisdiction over HFSG.   Because of this conclusion, the court pretermits any discussion of the motion as it pertains to Federal Rule of Civil Procedure 12(b)(6). *See Madara v. Hall*, 916 F.2d 1510, 1513–14 (11th Cir. 1990) (holding that a motion to dismiss for lack of personal jurisdiction should be addressed before a motion on Rule 12(b)(6) grounds).

The personal-jurisdiction inquiry is a two-step process implicating both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004).   Alabama law, however, allows personal jurisdiction consistent with the

outer limits of Due Process, collapsing the inquiry into the single question of whether the defendant has "minimum contacts with the forum state" such that "the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice." *Id*. (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)) (quotation omitted).   These minimum contacts may expose a defendant either to specific or general personal jurisdiction.   "Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (citing *Madara*, 916 F.2d at 1516 n.7); *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 & 9 (1984).   Only the defendant that "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," is exposed to specific personal jurisdiction. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 319 (1945)).   Due process thereby assures that a court may exercise jurisdiction only if the defendant's "conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980).   In contrast, general personal jurisdiction "arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated." *Consol. Dev. Corp.*, 216 F.3d at 1292.   "The due process requirements for general personal jurisdiction are more stringent," requiring "a showing of continuous and systematic general business contacts between the defendant and the forum state." *Id*. (citing

*Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1057 (11th Cir. 1996); *Helicopteros*, 466 U.S. at 412–13).

Whether specific or general, the plaintiff bears the initial burden of establishing personal jurisdiction. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).  To do so, it must put forth "enough evidence to withstand a motion for directed verdict." *Madara*, 916 F.2d at 1514 (citation omitted).  In determining whether that burden has been met, the court "must accept the facts alleged in the complaint as true, to the extent they are uncontroverted" by the evidence presented by the defendant. *Id.*  And even after the defendant comes forward with evidence refuting jurisdiction, the court will "construe all reasonable inferences in favor of the plaintiff" in the event of conflict between the complaint and the defendant's evidence. *Id.*; *see Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1275 (11th Cir. 2002) ("For the purposes of jurisdiction, the Court must construe all reasonable inferences in favor of Plaintiffs.").  But the prudent plaintiff will not rest on its laurels—after a defendant's "meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1112 (11th Cir. 1990); *see Polski Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986).

Even resolving all reasonable inferences in Mt. Hebron's favor, as the court must, it has not proven personal jurisdiction over HFSG.  The First Amended Complaint adequately alleges facts supporting jurisdiction over HFSG, shifting the burden to HFSG to prove otherwise. *See* Doc. 11-3 at 3 (alleging that HFSG is "doing business in the State of

Alabama[] through its sixteen (16) wholly owned subsidiaries," including Sentinel).   But HFSG has met that burden by introducing affidavits from its Vice President, David Kenna, and its Assistant Vice President, Terence Shields. Docs. 1-3 & 67-1.   The affidavits and the documentation they attach and authenticate establish HFSG's status as a Delaware corporation with its principal place of business in Connecticut. Doc. 67-1 at 2.   According to Kenna, HFSG is not an insurance company in as much as it does not sell or issue insurance policies or handle claims relating to insurance policies. Doc 67-1 at 3.   Instead, HFSG is a holding company for a number of subsidiary entities that issue property and casualty insurance, among other business activities. Doc. 1-3 at 3.   One of these subsidiaries is Sentinel, the company that issued Mt. Hebron's policy and is a defendant to this action. Doc. 1-3 at 3.

HFSG has also introduced evidence that it does not carry on any business in the State of Alabama independent of its subsidiaries. Doc. 67-1 at 3.   It is for this reason that HFSG is not licensed to do business in Alabama, nor does it have employees or offices here. Doc. 67-1 at 3.   Sentinel, on the other hand, does conduct business in Alabama, despite its principal place of business in Connecticut. Doc. 1-3 at 3.   The two companies keep separate books, records, and accounts, and manage their day-to-day operations independently. Doc. 67-1 at 3.   They do, however, share the use of the service mark "The Hartford" and the "Hartford Stag" logo. Docs. 67-1 at 8–10 & 41-4 at 2.

Conceptually, HFSG's argument is a simple one: as a holding company that does not conduct its own business in Alabama, HSFG has no contacts with this forum sufficient

to expose it to personal jurisdiction. *See* Docs. 31 at 3 & 67 at 1–2.   There is ample support

in the law for this position, as it is now "well established that as long as a parent and a

subsidiary are separate and distinct corporate entities, the presence of one in a forum state

may not be attributed to the other." *Consol. Dev. Corp.*, 216 F.3d at 1293.   The first issue

before the court, then, is whether HFSG and Sentinel are distinct corporate entities.   If so,

then Sentinel's forum contacts will not be imputed to HFSG, and there is no evidence

before the court of direct contacts that expose HFSG to personal jurisdiction.   If HFSG

and Sentinel are not distinct corporate entities, then Sentinel's imputed contacts with the

State of Alabama, including the issuance of Mt. Hebron's policy, will support personal

jurisdiction over HFSG.

As a general proposition, "a foreign parent corporation is not subject to the

jurisdiction of a forum state merely because a subsidiary is doing business there." *Meier*,

288 at 1272 (citing *Consol. Dev. Corp.*, 216 F.3d at 1291).   Instead,

> if the subsidiary is merely an agent through which the parent company
> conducts business in a particular jurisdiction or its separate corporate status
> is formal only and without any semblance of individual identity, then the
> subsidiary's business will be viewed as that of the parent and the latter will
> be said to be doing business in the jurisdiction through the subsidiary for
> purposes of asserting personal jurisdiction.

*Id*. (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §

1069.4 (3d ed. 2002)).   HFSG has satisfied the court that Sentinel is not its agent for

jurisdictional purposes.   This finding is based in part on the unique nature of the

holding-company structure.   "[H]olding companies are investment companies for the

purpose of diversifying risk.   As such, they do not conduct the same business as their

subsidiaries and their relationship cannot be viewed as one of agency." *Vogt v. Greenmarine Holding, LLC*, 2002 WL 534542, at *7 (N.D. Ga. Feb. 20, 2002); *see Melech v. Life Ins. Co. of N. Am.*, 2011 WL 1047716, at *5 (S.D. Ala. Mar. 1, 2011), *adopted*, 2011 WL 995821 (S.D. Ala. Mar. 18, 2011) (same).   Mt. Hebron nevertheless asks the court to conclude that Sentinel is HFSG's alter ego—that it "functions solely to achieve the purpose of the dominant corporation." *Meier*, 288 F.3d at 1273.   The evidence before the court does not support this finding.

The Eleventh Circuit's opinion in *Abramson v. Walt Disney Company*, 132 F. App'x 273 (11th Cir. 2005) is particularly instructive.   In *Abramson*, the plaintiffs alleged in their complaint that a parent company conducted business through its subsidiaries in the forum state and thereby subjected itself to derivative personal jurisdiction through the contacts of its subsidiary. *Id.* at 276.   While this allegation met the plaintiffs' *prima facie* burden, the claim was "directly and completely contradicted" by the defendant's affidavits through evidence of the limited scope of the parent's activities such as its lack of any direct business functions in the forum state. *Id.*   The affidavits also established indicia of corporate separation such as the companies' independent management of their own day-to-day activities and separate corporate records. *Id.*   This showing shifted the burden back to the *Abramson* plaintiffs, who were unable to muster competent evidence supporting personal jurisdiction. *Id.* at 277.   The evidence in the instant case mirrors that before the Eleventh Circuit in *Abramson*.   HFSG has introduced evidence that it does not carry on any business in Alabama independent of its subsidiaries, is not licensed to do

business in Alabama, and has no employees or offices here. Doc. 67-1 at 3.   And HFSG and Sentinel keep separate books, records, and accounts, and manage their day-to-day operations independently. Doc. 67-1 at 3.   The court concludes that this evidence is sufficient to show that Sentinel and HFSG have maintained some "semblance of individual identity." *Meier*, 288 F. 3d at 1727; *see Abramson*, 132 F. App'x at 277.

Mt. Hebron counters that the record evidence establishes one of two alternatives, both of which subject HFSG to the court's jurisdiction—that HFSG is "either the actual insurer . . . or Sentinel is merely an alter ego of HFSG." Doc. 71 at 6.   This claim is predicated in large part on the extensive use by both corporate entities of The Hartford service mark and Hartford Stag logo. *See* Doc. 71 at 1–6.   Mt. Hebron also notes that two of the members of Sentinel's Board of Directors are also officers of HFSG. Doc. 71 at 5. These facts are insufficient to prove jurisdiction over HFSG.   The claim that HFSG is the actual insurer cannot be squared with the evidence—HFSG has produced affidavits stating unequivocally that Sentinel, not HFSG, issued the insurance policy that is the subject of this suit. Docs. 1-3 at 3 & 67-1 at 3.   Mt. Hebron's bare assertion to the contrary does not make it so.   And the simple fact that there is partial unity of the companies' leadership structure is not determinative of agency. *E.g.*, *Portera v. Winn Dixie of Montgomery, Inc.*, 996 F. Supp. 1418, 1425 (M.D. Ala. 1998) (finding no agency relationship even though wholly-owned subsidiary's President was also employed by parent company).

In this light, Mt. Hebron's reliance on the common use of The Hartford service mark and Hartford Stag logo is not enough to muddy the waters.   As Mt. Hebron notes in

11

its supplemental brief, Doc. 71 at 8, under Alabama law

> [t]he doctrine of apparent authority is based upon the actions of the principal, not those of the agent; it is based upon the principal's holding the agent out to a third party as having the authority upon which he acts, not upon what one thinks an agent's authority might be or what the agent holds out his authority to be.

*Malmberg v. Am. Honda Motor Co.*, 644 So. 2d 888, 891 (Ala. 1994).   Despite correctly stating the law in this area, Mt. Hebron's argument misses the point.   For a finding of apparent authority, the question is not whether Sentinel led Mt. Hebron to believe that Sentinel was acting on behalf of HFSG, but whether HFSG, through its own actions, held out Sentinel as its agent.

In this respect, Mt. Hebron falls into the same trap that snared the plaintiff in *McCoy v. Mallinckrodt Pharmaceuticals, Inc.*, 2016 WL 1544732 (M.D. Ala. Mar. 23, 2016), *adopted*, 2016 WL 1465967 (M.D. Ala. Apr. 14, 2016), a markedly similar recent case in this district.   *McCoy* sued Cigna Corporation, a holding company that does not offer insurance products and does no business in the State of Alabama, over an insurance policy issued in Alabama by once of its subsidiaries. *Id.* at *5.   The subsidiary presented evidence that it was the sole administrator of the insurance product in dispute. *Id.* at *6.   However, the subsidiary often used the name "Cigna Group Insurance," a registered service mark that does not describe any specific legal entity. *Id.* at *5.   When Cigna Corporation established these facts by affidavit and documentary evidence, the plaintiff countered that an employee of the subsidiary had claimed to work for "Cigna" during a phone call, and sent letters and emails that also convinced the plaintiff that she worked for

"Cigna Insurance Group." *Id.* at *6.   The court found this proof of apparent authority to be lacking in that it exclusively involved "actions taken by the purported agent . . . rather than any action taken by [the parent]." *Id.* at *6.   Without apparent authority, the court found no personal jurisdiction over the parent. *Id.* at *7.

Just as in *McCoy*, HFSG does not offer its own insurance products and does not do business in Alabama.   Its subsidiaries do offer insurance products, including the policy Sentinel issued to Mt. Hebron, and they use The Hartford service mark in doing so.   Even if Sentinel's use of that service mark led Mt. Hebron to believe it was directly corresponding with HFSG, the record evidence shows that Mt. Hebron was mistaken. *See* Docs. 67-1 at 3 (explaining HFSG's lack of direct involvement with Sentinel's insurance products).   And if Sentinel's use of the service mark led Mt. Hebron to believe that Sentinel was acting as HFSG's agent, then Alabama law forecloses a finding of apparent authority because only HFSG's actions are relevant to this determination. *McCoy*, 2016 WL 1544732, at *6.   Just as with Cigna Corporation in *McCoy*, HFSG, as a passive holding company, has not taken any action vis-à-vis the plaintiffs that would create apparent authority under Alabama law.   The genesis of any confusion over Sentinel's authority can only have been Sentinel's own actions, as it was the only entity actively engaged in the insurance business in the State of Alabama. *See id.* at *6–7.   This is insufficient under Alabama law. *See, e.g.*, *Malmberg*, 644 So. 2d at 891.   Without apparent authority, Sentinel cannot be considered HFSG's agent for jurisdictional purposes, and the court has already found that HFSG's own activities do not establish

minimum contacts with the State of Alabama and that Sentinel is not HFSG's alter ego for jurisdictional purposes. This court therefore does not have personal jurisdiction over HFSG, and it is due to be dismissed without prejudice under Federal Rule of Civil Procedure 12(b)(2).

### D. HLLO's Motion to Dismiss or Quash Service

HLLO has not entered an appearance in this litigation, but Sentinel filed a motion to dismiss on its behalf, explaining that HLLO is not a legal entity subject to suit and also maintaining that service on HLLO was improper. Doc. 60; Doc. 1-3 at ¶ 7. Mt. Hebron does not oppose the dismissal of HLLO on the showing that it is not a legal entity subject to suit, but requested during oral argument that the dismissal be without prejudice. For good cause, and without opposition, the court recommends that the motion (Doc. 60) be GRANTED, and that all claims stated against HLLO be DISMISSED without prejudice.

### E. Mt. Hebron's Oral Motions to Dismiss The Hartford Company and Hartford Billing

Mt. Hebron's original complaint named The Hartford Company and Hartford Billing Company as defendants. *See* Doc. 1-1. While the First Amended Complaint no longer explicitly states claims against these defendants, Mt. Hebron has continued to include both defendants in the caption of its pleadings. *See* Doc. 11. During oral argument, Mt. Hebron confirmed that it no longer intends to bring claims against these defendants but inadvertently included their names in the caption of its amended complaint. To eliminate any confusion, Mt. Hebron made oral motions to dismiss both The Hartford Company and Hartford Billing. As a result, and consistent with the evidence before the

court that these are not legal entities subject to suit (Doc. 1-3 at ¶¶ 4–5), the court recommends that the oral motions to dismiss be GRANTED, and that all claims stated against The Hartford Company and Hartford Billing Company be DISMISSED without prejudice.

### F.    *Mt. Hebron's Motion to Strike and to Remove Counsel*

Also pending is Mt. Hebron's motion seeking to (1) strike certain exhibits HFSG submitted in support of its motion to dismiss, and (2) compel the disqualification of HFSG's counsel. Doc. 50.   As to the motion to strike, the financial reports and service mark authenticated by HFSG's counsel are textbook examples of the public availably documents of which the court may take judicial notice. *E.g.*, *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (taking judicial notice of documents filed with the Securities and Exchange Commission); *Edge Sys. LLC v. Aguila*, 186 F. Supp. 3d 1330, 1364 n.4 (S.D. Fla. 2016) (taking judicial notice of a trademark).   There is no basis for striking these exhibits.

In requesting disqualification, Mt. Hebron argues that HFSG's counsel has a conflict of interest in simultaneously representing HFSG and other entities within the Hartford family of companies, and that counsel has also made herself a necessary witness by authenticating the documents described above. Doc. 50 at 2–3.   In considering this request, the court is mindful that "disqualification is always a drastic measure" to be avoided "except when absolutely necessary." *In re Empl. Discr. Litig. Against Ala.*, 453 F. Supp. 2d 1323, 1331 (M.D. Ala. 2001) (citations and quotations omitted).   For this reason,

"the moving party is held to a high standard of establishing the basis of the motion, and the need for disqualification." *Id.* at 1332 (citations omitted).

Mt. Hebron has fallen far short of that high bar. It initially relies on HFSG's counsel's "funneling of responsibility" to Sentinel as evidence of a conflict of interest under Alabama Rule of Professional Conduct 1.7(a). Doc. 50 at 2. Mt. Hebron provides no authority for its interpretation of the rule, and the court is aware of nothing inherently improper about the simultaneous representation of multiple companies within the same corporate structure or in counsel's efforts to assure that the correct defendants are made parties to the lawsuit. A conflict of interest must be "actual, not merely hypothetical or speculative." *McConico v. State of Ala.*, 919 F.2d 1543, 1546 (11th Cir. 1990) (citations omitted). Mt. Hebron has made no meaningful showing of an actual conflict of interest.

Similarly, Mt. Hebron's argument for disqualification under Alabama Rule of Professional Conduct 3.7 skips over a crucial predicate. A witness is necessary only if she possesses "crucial information" that is "unobtainable elsewhere.'" *Hershewe v. Givens*, 89 F. Supp. 3d 1288, 1292 (M.D. Ala. 2015) (citing *Lane v. State*, 80 So. 3d 280, 299 (Ala. Crim. App. 2010)). That another witness could authenticate the documents at issue—if they are not self-authenticating—is beyond question.[1] This alone defeats Mt. Hebron's claim that HFSG's counsel must be disqualified as a necessary witness. In fact, Mt. Hebron's three-page motion is so threadbare, and yet addresses so weighty of a subject as compelled disqualification, that the court interjects a word of caution. Because "a motion

---

[1] Alabama Rule of Professional Conduct 3.7(a)(1) specifically allows attorney testimony on an "uncontested issue," which may apply here as well.

for disqualification is such a potent weapon and can be misused as a technique of harassment, the court must exercise extreme caution in considering it to be sure it is not being used to harass the attorney sought to be disqualified, or the party he represents." *In re Empl. Discr. Litig. Against Ala.*, 453 F. Supp. 2d at 1332 (citations and quotations omitted).   This is the lens through which the court views this and any future motions in the same vein, and any improper purpose will not be tolerated.

As Mt. Hebron has not carried its burden of proving that the exhibits should be stricken or that HFSG's counsel must be disqualified, the court recommends that the motion to strike and to disqualify HFSG's counsel (Doc. 50) be DENIED.

**2.    Motions Relating to Sentinel's Complaint in Interpleader**

*A.    Mt. Hebron's Motion to Dismiss Interpleader Action*

Mt. Hebron filed a pleading designated as both an answer and motion to dismiss Sentinel's complaint in interpleader. Doc. 28.   During oral argument, Mt. Hebron clarified that the motion to dismiss is directed only to Sentinel's claim for attorney's fees and any request that Sentinel be discharged at the time it tenders the interpleader funds.   The court concludes that neither issue is ripe.   First, no motion for attorney's fees has been filed at this time.   Mt. Hebron may eventually contest any request Sentinel makes, but it has jumped the gun in filing a motion under Rule 12(b)(6) on this basis.   Second, while Sentinel included a reference to a discharge in its prayer for relief, it has not filed a motion requesting discharge at this time.   The complaint in interpleader has, however, stated a plausible claim for an eventual discharge.   Accordingly, the court recommends that Mt.

Hebron's motion to dismiss (Doc. 28) be DENIED.

### B.    Interpleader Action

Mt. Hebron does not oppose Sentinel's request to interplead the funds at issue, nor does any other party.   Interpleader is appropriate where a defendant faces "claims that may expose [it] to double or multiply liability." Fed.R.Civ.P. 22(a)(1) & (2).   Consistent with the recommendation that Mt. Hebron's motion to dismiss be denied, the court recommends that this case be REFERRED back to the undersigned Magistrate Judge for further proceedings, including the entry of an order compelling Sentinel to interplead the disputed funds in its possession.[2]

### C.    Alexander's Motion for Separate Trials

Alexander has moved under Rule 42(b) for separate trials of Mt. Hebron's claims and Sentinel's interpleader action, with the interpleader action to be resolved first. Doc. 33. Rule 42(b) vests this court with the authority to order separate trials in the interest of "convenience, to avoid prejudice, or to expedite and economize."   In so doing, Rule 42(b) "confers broad discretion" on the court to manage its cases efficiently. *Harrington v. Cleburne Cty. Bd. of Educ.*, 251 F.3d 935, 938 (11th Cir. 2001).   This grant of broad discretion effectively insulates the district court from appellate review except where no "legitimate reason" justifies the court's decisions on the most appropriate trial structure.

---

[2]  The parties have made known their respective positions on whether the interpleader funds should include pre-judgment interest. *See* Docs. 68 & 72.   This question will be resolved without further briefing in the event this recommendation is adopted and the matter is referred back to the undersigned.   The court will also, at that time, take up Mt. Hebron's request for sanctions against HFSG, and will order any additional briefing or schedule an evidentiary hearing, as appropriate. *See* Docs. 73 & 75.

*See id.* at 939 ("At a minimum, we think, the district court had to have had some legitimate reason for letting the defense make a tactical decision for [the plaintiff].").

Alexander posits that questions litigated during the interpleader action are likely to result in issue preclusion during the trial of Mt. Hebron's claims, particularly if the interpleader action results in a judgment in his favor. Doc. 33 at 5.  The court finds wisdom in this position.  "Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)).  Here, Mt. Hebron brings tort claims against Sentinel for breach of contract and bad-faith denial of its insurance claim. Doc. 11 at 5–11.[3]  For these claims to be successful, Mt. Hebron must prove that Sentinel violated the insurance agreement by issuing the insurance proceeds to both Mt. Hebron and Alexander. Doc. 11 at 4. Otherwise Sentinel merely paid the claim when it came due and to whom it was payable under the policy. *See, e.g.*, *Mut. Serv. Cas. Ins. Co. v. Henderson*, 368 F.3d 1309, 1314–15 (11th Cir. 2004) (explaining that Alabama law recognizes two forms of bad-faith claims, both of which require a breach of the insurance contract at issue).  This precise issue will be the focus of the interpleader action, as Mt. Hebron and Alexander have taken conflicting and irreconcilable positions on whether Alexander's mortgage has been satisfied such that he is not entitled to any portion of the distribution and should not have been listed on the

---

[3] As stated above, the court recommends dismissal of the third cause of action against Sentinel, for intentional interference with a contractual relationship.

policy as a mortgagee. Doc. 21 at 12–14.   The court makes no finding that issue preclusion or any other form of *res judicata* will attach to the subsequent proceeding—only that there is meaningful potential for it do so.   And if it does, the court may well be saved the time and resources of trying Mt. Hebron's claims to a jury.   This increased efficiency militates in favor of separate trials.[4]

Alexander also argues that he will be prejudiced if the interpleader is tried with the other claims, invoking another expressed basis for separate trials under Rule 42(b). Again, his argument is well taken.   The district court has discretion to award attorneys' fees and costs to the disinterested party who initiates an interpleader action. *Prudential Ins. Co. of Am. v. Boyd*, 781 F.2d 1494, 1497 (11th Cir. 1986) (citing *Perkins State Bank v. Connolly*, 632 F.2d 1306, 1311 (5th Cir. 1980)).   The court may elect to tax these costs and fees directly against a party, but the "usual practice" is to tax them against the interpleader fund. *Id.* at 1498 (citing *Prudential-Bache Secs., Inc. v. Tranakos*, 593 F. Supp. 783, 785 (D. Ga. 1984)).   It is reasonable for Alexander to be concerned that his eventual recovery, if he prevails on the interpleader action, could be eroded by the cost of Sentinel's defense of Mt. Hebron's claims.   Resolving the interpleader before Mt. Hebron's claims allows Sentinel to delay the bulk of its defense costs—and possibly to avoid them altogether.   In this way both Alexander and Sentinel avoid the potential for prejudice if separate trials are ordered.

---

[4] Alexander argues that the efficiency created by separate trials is a "one-way street" in as much as Mt. Hebron's differing burdens of proof are likely to prevent issue preclusion if Mt. Hebron's claims are sequenced before the interpleader action. Doc. 33 at 78.   This argument has merit, and no party opposes his proposal to try the interpleader action before Mt. Hebron's claims.

Perhaps for this reason, Sentinel has indicated its consent to separate trials in writing. *See* Doc. 46.   During oral argument, Mt. Hebron conveyed that it also does not oppose this arrangement.   Accordingly, the court recommends that Alexander's motion for separate trials (Doc. 33) be GRANTED without opposition, and that the court order that Mt. Hebron's claims be tried separately from—and after—the interpleader action.[5]

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the pending motions be resolved as set forth below:

1.   That Sentinel Insurance Company's Motion to Dismiss Count III of Plaintiff's Amended Complaint (Doc. 20) be GRANTED, and that Count Three be DISMISSED with prejudice as to Sentinel Insurance Company;

2.   That Southern Insurance Underwriters, Inc.'s Motion to Dismiss First Amended Complaint (Doc. 22) be GRANTED, and that all claims stated against Southern Insurance Underwriters, Inc. be DISMISSED with prejudice;

3.   That Hartford Financial Services Group, Inc.'s Motion to Dismiss (Doc. 31) be GRANTED, and that all claims stated against Hartford Financial Services Group, Inc. be DISMISSED without prejudice;

4.   That the Motion to Dismiss or Quash Service on Defendant Designated as "The Hartford Large Loss Organization" (Doc. 60) be GRANTED, and that all claims stated against The Hartford Large Loss Organization be DISMISSED without prejudice;

5.   That Mt. Hebron District Missionary Baptist Association of AL, Inc.'s Oral Motion to Dismiss The Hartford Company, Inc. be GRANTED, and that all claims stated against The Hartford Company be DISMISSED without prejudice;

---

[5] The court acknowledges that the proposed bifurcation will necessitate careful consideration of certain procedural matters, including the mechanics for most efficiently accomplishing the discovery phase.   In the event this recommendation is adopted and the matter is referred back to the undersigned, the parties will convene for a conference to address these procedural matters.

6.  That Mt. Hebron District Missionary Baptist Association of AL, Inc.'s Oral Motion to Dismiss The Hartford Billing Company: Sentinel Insurance Company, Ltd. be GRANTED, and that all claims stated against Hartford Billing Company: Sentinel Insurance Company, Ltd. be DISMISSED without prejudice;

7.  That Mt. Hebron District Missionary Baptist Association of AL, Inc.'s Motion to Strike, Objection to Matters Outside of the Pleadings, and Motion to Remove Counsel of Record of Defendants (Doc. 50) be DENIED;

8.  That Mt. Hebron District Missionary Baptist Association of AL, Inc.'s Motion to Dismiss Sentinel Insurance Company's Interpleader Counterclaim (Doc. 28) be DENIED; and

9.  That Landon Alexander Sr.'s Motion to Sever and Separate Trials (Doc. 33) be GRANTED.

It is further ORDERED that the parties are DIRECTED to file any objections to this Recommendation on or before **March 30, 2017.**   Any objections filed must identify the specific findings in the Magistrate Judge's Recommendation to which the party is objecting.   Frivolous, conclusive or general objections will not be considered by the District Court.   The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 16th day of March, 2017.

                                    /s/ Gray M. Borden
                              UNITED STATES MAGISTRATE JUDGE