IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MT. HEBRON DISTRICT MISSIONARY BAPTIST ASSOCIATION OF AL, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 3:16-cv-658-ECM-GMB [WO] |
| SENTINEL INSURANCE COMPANY, LIMITED, | ) ) ) ) | |
| Defendant, | ) ) | |
| v. | ) ) | |
| LANDON ALEXANDER, SR., | ) ) | |
| Third-Party Defendant. | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1), this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law. Doc. 55. Plaintiff and Counterclaim-Defendant Mt. Hebron District Missionary Baptist Association of AL, Inc. ("Mt. Hebron") filed this lawsuit on July 8, 2016 in the Circuit Court of Bullock County, Alabama. Doc. 1 at 2. Defendants removed the action to the United States District Court for the Middle District of Alabama on August 11, 2016. Doc. 1. Before the court is Plaintiff's Amended and Renewed Motion for Summary Judgment. Doc. 119. With briefing and discovery now complete, the summary judgment motion is ripe for disposition. After careful consideration of the parties' submissions, the applicable law, and the record as a whole, the undersigned

Magistrate Judge RECOMMENDS that the Amended and Renewed Motion for Summary Judgment (Doc. 119) be GRANTED in part and DENIED in part.

## I.  JURISDICTION AND VENUE

The court has subject-matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332.  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations to support both.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The purpose of summary judgement is to separate real, genuine issues from those which are formal or pretended." *Tippens v. Celotex Corp.*, 805 F.2d. 949, 953 (11th Cir. 1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt

as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, the nonmovant must "go beyond the pleadings" and submit admissible evidence demonstrating "specific facts showing that there is a genuine [dispute] for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

When a district court considers a motion for summary judgment, it "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the nonmovant." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation and internal quotation marks omitted). The court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1315 (11th Cir. 2007) (citation omitted). Importantly, if the nonmovant "fails to adduce evidence which would be sufficient . . . to support a jury finding for [the nonmovant], summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (citation omitted).

### III.  FACTUAL AND PROCEDURAL BACKGROUND

Mt. Hebron is an association of 17 churches. Doc. 121-1 at 2. In 2005 or 2006, Mt. Hebron began construction on a facility in Bullock County, Alabama, to be used for

gatherings and other functions. Doc. 121-1 at 3. Mt. Hebron enlisted the help of some of its members to build the facility, including Third-Party Defendant Landon Alexander, Sr. Docs. 121-9 at 8–9 & 132-1 at 7–8. Alexander contributed both money and physical labor to the construction, and Mt. Hebron agreed to compensate him in return. Doc. 121-9 at 10–11. In his response to the Motion for Summary Judgment, Alexander claimed that "[i]t is undisputed that [he] was the general contractor on the Mr. Hebron District Association Center." Doc. 126 at 3. Alexander is not a licensed contractor in the State of Alabama. Doc. 132-1 at 7.

Although Alexander and Mt. Hebron dispute the appropriate amount of compensation to be paid to Alexander, they agree that he was to be paid more than $50,000 for his work on the project. Docs. 121-2 at 3–4 & 127-3 at 2. Specifically, Mt. Hebron has introduced evidence that it agreed to pay Alexander $148,000 for the construction of the church. Docs. 120 & 121-2 at 3–4. Alexander contends, on the other hand, that on October 27, 2009 Mt. Hebron board member Solomon Tarver contracted to pay him for general contracting work at $85 per square foot for a total of $507,472. Docs. 127-9 at 5 & 127-3 at 2; *see also* Doc. 121-1 (disputing that Tarver had authority to enter into a contract on behalf of Mt. Hebron and maintaining that Alexander had not requested payment on this contract prior to October 2017).[1] Mt. Hebron has introduced evidence indicating that to date it has paid Alexander more than $160,000 but far less than $507,472. *See* Docs. 121-

---

[1] Mt. Hebron objects to the admission of Exhibit I (Doc. 127-9) and Exhibit J (Doc. 127-10), which were submitted by Alexander as support for his claim that Solomon Tarver had the authority to enter into a construction contract on Mt. Hebron's behalf. Doc. 131 at 11–13. Because, for reasons stated below, the admissibility of these documents has no impact on the outcome of the interpleader action, the court will not address Mt. Hebron's argument at this time.

4

1 & 121-3.

In December 2010, Mt. Hebron purchased an insurance policy on the church building from Sentinel Insurance Company, Ltd ("Sentinel"). Doc. 127-4 at 9. Mt. Hebron renewed the policy annually from 2010 through 2016. Doc. 127-4 at 9 & 13–16. Occasionally, Alexander paid some of the insurance premiums. Docs. 127-6 at 2 & 121-2 at 7. Mt. Hebron is listed on the policy as the named insured, with Alexander at times listed as having an "Additional Interest" or as a "Mortgage Holder." Docs. 127-4 at 9–16 & 20-1 at 17.

On April 6, 2016, a tornado destroyed the building. Doc. 11-4 at 1. On April 29, 2016, Sentinel issued a $708,335 check for the policy proceeds to Mt. Hebron and Alexander, who was listed as a mortgage holder on the policy in effect on the date of the tornado. Docs. 11-5 at 1 & 20-1 at 17. Mt. Hebron claims that Alexander had "no right to the proceeds of the policy because he was not a mortgagee, was not the named insured, and did not have an insurable interest in the subject property." Doc. 120 at 2. As a result, Mt. Hebron initiated this action against the insurance company to recover the full proceeds. Doc. 1-1. Sentinel, denying any wrongdoing, answered with a counterclaim against Alexander and a complaint in interpleader. Doc. 7. Alexander filed a counterclaim against Mt. Hebron asserting that it has breached their contract by not paying him the money that he is owed. Doc. 110 at 6–8.

Mt. Hebron filed for summary judgment with respect to Sentinel's interpleader claim and both causes of action in Alexander's counterclaim,[2] contending that Alexander

---

[2] The court previously severed the interpleader claim from all other claims pending in this lawsuit and ordered that the interpleader claim be tried first. Docs. 76, 80 & 83. Due to the severance, the court issued

5

is not entitled to recover any of the policy proceeds. Doc. 119 at 1. Based on the foregoing facts and an Alabama law that voids contracts with unlicensed general contractors, the court issued a recommendation that Alexander did not have an insurable interest and therefore that the motion for summary judgment should be granted. Doc. 135.

Alexander objected to the recommendation, contending that he did not have an opportunity to respond to Mt. Hebron's argument that he was not entitled to the policy proceeds because he was an unlicensed general contractor. Doc. 138. To cure any potential prejudice to Alexander, the court vacated its previous recommendation and ordered additional briefing on this issue. Doc. 139. Despite his previous assertions that he did serve as the general contractor for the project, Alexander now maintains that "there is, at least, a genuine issue of material fact as to whether Dr. Alexander's work qualifies as that of a general contractor." Doc. 140 at 2–3.

## IV. DISCUSSION

Central to this action is the determination of whether Alexander maintained an insurable interest in the Mt. Hebron church building. Because this is a question of substantive law and not procedure, the court will apply Alabama law. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (recognizing that "federal courts are to apply state substantive law and federal procedural law"). "[I]n order to receive benefits for a loss under a contract of property insurance, an insured must have an insurable interest in the insured property."

---

a scheduling order relating only to the interpleader claim, reserving any ruling on the administration of the second phase of litigation, as had been requested by the parties. *See* Docs. 112 at 2 & 113 at 1. In light of the previous order that the interpleader claim be severed and tried separately from and before all other claims, the court recommends that Mt. Hebron's Amended and Renewed Motion for Summary Judgment (Doc. 119) be DENIED as premature to the extent it relates to any claim other than the interpleader action.

*Hunter v. St. Farm Fire & Cas. Co.*, 543 So. 2d 679, 680 (Ala. 1989) (citation and internal quotation marks omitted). An insurable interest is "any actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance." Ala. Code § 27-14-4(b). Alabama law embraces a factual expectation theory for insurable interests, meaning that an insurable interest exists where the insured will gain economic advantage from the continued existence of the property or suffer economic disadvantage upon damage to or loss of the property. *See* Ala. Code § 27-14-4(c). This interest must be in existence at the time of the loss, and without it "[n]o contract of insurance of property or of any interest in property, or arising from property, shall be enforceable." Ala. Code § 27-14-4(a). Because Alabama law requires an insurable interest in order for a party to recover benefits under an insurance contract, the court will analyze the potential avenues by which Alexander might claim an insurable interest in Mt. Hebron's building.[3]

**A.     Mortgage**

A mortgage qualifies as an insurable interest, so if Alexander held a mortgage on the church building he could be entitled to the insurance policy proceeds. *Baldwin Mut. Ins. Co. v. Henderson*, 580 So. 2d 574 (Ala. 1991). However, to hold a valid mortgage in Alabama, the mortgagee must record his interest. Ala. Code § 35-4-90. Mt. Hebron and Alexander agree that Alexander does not hold a mortgage on the building. Docs. 120 at 5

---

[3] Alexander maintains that Mt. Hebron's motion for summary judgment should be denied because only an insurer may question the validity of an insurable interest. Doc. 126 at 15. To support this proposition, Alexander cites to *Metcalf v. Montgomery*, 155 So. 582 (Ala. 1936), a case relating to the assignment of disability insurance benefits to a third party in which the court recognized "some confusion" about "whether the right to question the insurable interest of an assignee is available to the assignor" or whether "only the insurer may do so," *id.* at 585, but expressly refused to reach this issue. *See id.* at 586. Accordingly, *Metcalf* lends no support to Alexander's argument, and the court is not aware of any other authority on point. At any rate, for all practical purposes Sentinel is the party who has placed the question of Alexander's insurable interest at issue by bringing this interpleader action and tendering the policy proceeds.

& 126 at 8. Additionally, there is no evidence in the record demonstrating that Alexander ever recorded a mortgage on the property. Even though at times Alexander has been listed as a "mortgage holder" on the Sentinel insurance policy paperwork, there is no genuine dispute about whether Alexander held a valid mortgage interest in the church building at the time of loss.

**B.     Other Insurable Interests**

There also is no genuine dispute as to whether Alexander holds any other insurable interest in the church building. "[W]hatever furnishes a reasonable expectation of pecuniary benefit from the existence of the subject of the insurance is a valid insurable interest." *Pac. Nat. Fire Ins. Co. v. Watts*, 97 So. 2d 797, 801 (Ala. 1957). But that interest must be "lawful." Ala. Code § 27-14-4(b). In a section of his brief devoid of any case law, Alexander argues that he has an insurable interest in the building "whether or not the subject contract between he and Mt. Hebron is valid." Doc. 140 at 7. Alexander appears to assert that he has an insurable interest because he agreed to contribute time and money to the construction of the church and paid some of the insurance premiums. Doc. 140 at 6. The court is not aware of any statutory or case law that recognizes the creation of an insurable interest merely by contributing time and money to a project. Alexander has not provided any authority for this proposition, and the court finds his argument unavailing.

    **1.     *General Contractor***

Defying his previous assertions, Alexander next argues that he was not a general contractor for the Mt. Hebron project. Doc. 140 at 5. But the facts place Alexander squarely within the definition of a general contractor pursuant to Alabama Code § 34-8-1. Alabama law defines a general contractor as one who undertakes to construct a building for a fee

8

where the cost of the undertaking is $50,000 or more. Ala. Code § 34-8-1.[4] "In determining whether a person has engaged in the type of work covered by this definition, Alabama courts have looked at many factors, such as, the intent of the parties, the amount of control by the person, and the type of work performed by the person." *Allstate Ins. Co. v. Hugh Cole Builder, Inc.*, 127 F. Supp. 2d 1235, 1238 (M.D. Ala. 2001). Alabama law requires that those engaged in the business of general contracting be licensed. Ala. Code § 34-8-6.

Alexander asserts that he is entitled to a portion of the policy proceeds based on his contract with Solomon Tarver on behalf of Mt. Hebron. Docs. 126 at 25 & 110 at 7–8. The purported contract shows that Alexander agreed to undertake the construction of the Mt. Hebron building for a fee of $507,472. Doc. 127-3. During his deposition, Alexander identified himself as the "general contractor" for the project, Doc. 132-1 at 8, and others confirmed that Alexander coordinated the construction efforts. *E.g.*, Doc. 127-2 at 7–8.

Holding no general contractor's license, Alexander argues that the facts here are similar to those of *Central Alabama Home Health Services, Inc. v. Eubank*, 790 So. 2d 258, 262 (Ala. Civ. App. 2000), where the court concluded that there was a material dispute on the question of whether the appellee was a general contractor. The appellee in that case, Schuyler Eubank, was hired by Central Alabama Home Health Services, Inc. ("CAHHS") as the "property manager" for an office in Montgomery, Alabama and in Valley, Alabama. *Id.* at 260. The CAHHS president testified that Eubank was not hired to serve as a general contractor for either project. *Id.* at 261. CAHHS agreed to pay Eubank $20 per hour and 32 cents per mile traveled for his property management services. *Id.* at 260.

---

[4] The requisite fee to be considered a general contractor was $20,000 or more until 1997, when the Alabama legislature amended § 34-8-1 to increase the fee to $50,000 or more.

For the Montgomery office, Eubank served as the coordinator between the architect, the corporate staff, and a construction company hired to serve as a general contractor. *Id*. at 261.  Eubank helped prepare schematic plans, loan packaging, and development plans to be submitted to the City of Montgomery. *Id.*  For the Valley office, Eubank conducted negotiations on behalf of CAHHS with Rod Spraggin, who was selected as the general contractor for the office. *Id.*  Spraggin spoke with Eubank every day during the construction. *Id.*  No architect was hired to complete the office, but Eubank provided Spraggin with an initial floor plan and a drawing of how the exterior should look. *Id.* CAHHS instructed Spraggin to duplicate its Phenix City office. *Id.*  Based on these facts, the court determined that there was a material dispute as to whether Eubank was a general contractor within the meaning of § 34-8-1. *Id.*

Alexander argues that, like Eubank, he was appointed to be the coordinator of the construction efforts and that he was "just the individual that made sure the project ran smoothly." Doc. 140 at 5.  To support his argument, Alexander quotes from Felix Worthen's deposition, even though the entirety of the transcript has not been submitted to the court:

> A. When we accumulated a certain amount of money, there was discussion saying we could probably have—we probably have enough money to start the building. Now, we knew we didn't have enough money to go out and get a professional contractor to do it, but at the end of the discussion, it was enough people within the association that had skills and know-how that if we all came together, put our efforts together, worked together, we could build it ourselves.
>
> Q. All right. And was—you agree with me that Dr. Alexander was the one leading that effort?
>
> A. No. The moderator was, you know, the leader of the effort, you know. And so, when we all came together and talked about building the building

10

>and, you know, what it would take to build the building, then you know, everybody had input. Everybody discussed about what they knew how to do, what they do, da da da da da. And of course, Dr. Alexander made his opinion or expressed his expertise in certain things within the meeting. That's when it was decided that he would kind of coordinate everybody because, you know, you couldn't just have everybody come down there and do whatever.
>
>Q. Too many cooks in the kitchen. I understand.
>
>A. Right. So that's when it was decided he would kind of coordinate the efforts. You know, it's one thing to have a bunch of folks with skills coming to do something, but you needed someone to kind of coordinate and make sure the effort, you know, was fruitful.
>
>Q. So Dr. Alexander was the one that was kind of appointed to coordinate this effort, correct?
>
>A. Uh-huh.

Doc. 140 at 3–4.  The deposition further included this exchange:

>Q. And as I understand it, he was kind of the custodian of the project and then later on of the building, correct?
>
>A. Yeah. It was the—well, I don't know what the word custodian may mean in this sense. But, you know, he was the one that coordinated everything. And you know, basically the guys that knew how to do certain things would show up. They would do it. He would kind of, you know, give them tips on how basically he wanted it done, and then they would perform the act.

Doc. 127-2 at 8–9.

Notwithstanding Alexander's about-face on this issue in recent briefing, the court finds that there is no dispute of material fact as to whether Alexander served as a general contractor for the Mt. Hebron construction project consistent with the analysis set forth in *Eubank*.  Unlike the appellee in *Eubank*, Alexander performed construction work on the project, including the installation of sheetrock and electrical work. Doc. 121-9 at 11.  And Alexander was not hired as a "property manager" as Eubank had been.  The parties' intended for Alexander to serve as the general contractor, as he unambiguously testified.

11

Doc. 132-1 at 8.  The deposition exchange is as follows:

> Q. Okay. My question is have you ever held a general contractors license in the state of Alabama?
>
> A. No ma'am—no sir.
>
> Q. Okay. Did you do general contracting work on the Mt. Hebron building that we're here about today, down in Bullock County?
>
> A. Will you—will you do that again?
>
> Q. Did you do general contracting work, as a general contractor, on the Mt. Hebron building down in Bullock County that we're here about today?
>
> A. Yes, sir. I built the—I built the—I built that, yes.
>
> Q. Okay. Were you the general contractor on that project?
>
> A. Say what, now?
>
> Q. Were you the general contractor for that project?
>
> A. Yes, sir.

Doc. 132-1 at 7–8.

Alexander's new assertion that her "was not a general contractor," Doc. 140 at 5, directly contradicts, and is inherently inconsistent with, his deposition testimony and all other record evidence.  Alexander has not provided any explanation, let alone "any valid explanation," for why his new argument contradicts his "previously given clear testimony." *Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).  Even drawing all inferences in Alexander's favor, there is no evidence in the record upon which the court could conclude that Alexander did not serve as the general contractor, as he admitted in initially arguing that it is "undisputed" he served as "the general contractor on the Mt. Hebron District Association Center." Doc. 126 at 3.  For the reasons that follow,

this precludes Alexander from having an insurable interest in the Mt. Hebron building.

Alabama law requires that those engaged in the business of general contracting be licensed. Ala. Code § 34-8-6.  Resolving all genuine factual disputes in favor of Alexander, the nonmovant, the record evidence shows that he served as a contractor for the church building, that he agreed to undertake the construction work for a fee of more than $50,000, and that he was unlicensed.  Contracts with unlicensed contractors are unenforceable and void as a matter of public policy. *See Architectural Graphics & Const. Servs., Inc. v. Pitman*, 417 So. 2d 574, 576 (Ala. 1982).  As a result, these contractors "cannot recover under a contract or a quasi-contract" theory. *White v. Miller*, 718 So. 2d 88 (Ala. Civ. App. 1998).  "Alabama courts make no apologies for the sometimes draconian consequences of this inflexible rule," which is intended to protect the public from incompetent contractors. *ThyssenKrupp Steel USA, LLC v. United Forming, Inc.*, 926 F. Supp. 2d 1286, 1291–92 (S.D. Ala. 2013).  Here, Alexander admitted in his deposition that he has never been licensed by the State of Alabama to perform general contracting work. Doc. 132-1 at 7. Therefore, as with any other qualifying contract by an unlicensed general contractor, Alexander's construction contract is null and void. *E.g.*, *White*, 718 So. 2d at 89; *Cooper v. Johnston*, 283 Ala. 565, 569 (1969) (holding that an unlicensed general contractor is "not entitled to recover for his services incident to the [null and void] contract").

This fact is fatal to Alexander's claim for the interpleader proceeds, because an insurable interest requires an actual, lawful, and substantial economic interest in the subject of the insurance policy. *See* Ala. Code § 27-14-4(b); *White-Spunner Const., Inc. v. Constr. Completion Co., LLC*, 103 So. 3d 781, 787 (Ala. 2012) ("Moreover, this Court has held that [a] person cannot maintain a cause of action if, in order to establish it, he must rely in

13

whole or in part on an illegal or immoral act or transaction to which he is a party.") (internal citations omitted); *Ellis v. Batson*, 58 So. 193, 194 (Ala. 1912) ("Whenever a party requires the aid of an illegal transaction to support his case, he cannot recover."); *Pope v. Glens Falls Ins. Co.*, 34 So. 29, 30 (Ala. 1903) ("A person can have no insurable interest where his only right arises under a contract which is void or unenforceable at law or in equity."). The parties spend considerable effort in their briefs arguing over the existence of a written contract and whether Solomon Tarver had the authority to enter into a contract that would be binding on Mt. Hebron. These issues are beside the point since any construction contract with Alexander for more than $50,000 would have been void.

### 2. Property Owner

Finally, Alexander contends that he has an insurable interest in the Mt. Hebron building because his status as an owner of the property exempts the contract with Solomon Tarver from the licensing requirement for all general construction contracts. Doc. 140 at 2–3. Alexander claims that he was "heavily involved in Mt. Hebron's leadership," so he should be considered a property owner. Doc. 140 at 2. Alexander then cites to Alabama Administrative Code Regulation 230-X-1-.7 to support the proposition that, as a property owner, he need not be licensed as a general contractor:

> A person, firm or corporation which undertakes to construct a building or other improvements on his/her own real property . . . is not required to be licensed as a general contractor if the person, firm or corporation's own forces (non-contractual) are used. An owner/builder may only let and/or award contracts for work in the amount of $50,000 . . . or greater to a properly licensed prime contractor.

Nothing about this regulation suggests that being "heavily involved" in the association's leadership gives Alexander ownership of Mt. Hebron's property, and Alexander has not

provided any authority for this position or any other evidence upon which the court might conclude that he owns the property. In addition, the language of the regulation specifically exempts only "non-contractual" work, so the exemption could not apply where, as here, the contractor bases his claim for compensation entirely on a contract.

Alexander has not developed evidence demonstrating any insurable interest beyond the unlawful general contracting agreement. Thus, even when viewing all the evidence and factual inferences in his favor, there is no genuine dispute that Alexander did not maintain a lawful insurable interest in the subject church building at the time of its destruction. Mt. Hebron is entitled to summary judgment on the interpleader claim as a result.

## V. CONCLUSION

For the foregoing reasons, it is RECOMMENDED that Mt. Hebron's motion for summary judgment (Doc. 119) be GRANTED to the extent it is directed to the interpleader action and DENIED to the extent it seeks summary judgment on any other claims in this lawsuit.

It is furthered ORDERED that the parties are DIRECTED to file any objections to the report and recommendation **January 30, 2019.** Any objections filed must specifically identify the findings in the Magistrate Judge's report and recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this report and recommendation is not a final order of the court, and, therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo*

determination by the District Court of issues covered in the report and recommendation and shall bar the party from attacking on appeal the factual findings in the report and recommendation accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 16th day of January, 2019.

/s/ Gray M. Borden
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE